Thank you, Your Honor. Good morning, and may it please the Court. I'm David Klein. I represent the appellants, Abu Zubaydah, as he calls himself, and Joseph Margulies. In this case, the District Court entered an order granting the government's motion to quash in its entirety, which was in large part inconsistent with its underlying findings on state secrets. And I quote the District Court, it did not find convincing the government's claim that merely acknowledging or denying the fact that the CIA was involved in a facility in Poland poses an exceptionally grave risk to national security. That's a core finding. It's not merely an exceptional finding in this case. That is a finding that eviscerates the Court's ultimate decision to quash the subpoenas that it first permitted to be issued. As a further error, the Court failed to consider disentangling whatever sensitive information it did believe existed from nonsensitive information, which this Court's precedent in Jeppesen data plan requires. It quashed the subpoenas in their entirety, speculating instead that any discovery it would allow would not be useful in a foreign investigation. That was an improper grounds for decision both under Reynolds, Jeppesen, and indeed under 28 U.S.C. Section 1782. The government attempts to shore up the District Court's inconsistent ruling with three arguments that the District Court itself didn't make or indeed came out the other way. First, again, despite the District Court's express finding that Mitchell and Jessen were not government agents, the Court, excuse me, the government insists that their testimony would constitute its own acknowledgment of state secrets that it cannot be heard to admit. This is a non sequitur. These facts aren't secrets, and Mitchell and Jessen's testimony would not be on behalf of the government. Second, it argues that this Court should announce a discovery exception to the Reynolds doctrine, allowing courts to skip the third set, the third stage of the Reynolds analysis, that is disentangling privileged from nonprivileged information. And third, it argues that the District Court had discretion under Section 1782 to consider whether nonsensitive information would be useful in a foreign universe. Let me first address whether there was a secret and whether Mitchell and Jessen's testimony would constitute any sort of acknowledgment on behalf of the government. The District Court, based on the findings of the European Court of Human Rights, as well as the Polish government's own acknowledgment in conducting the criminal investigation at issue, concluded that it was no secret that the CIA operated a dark site in Poland. The government hasn't contested this. Instead, it argues that it cannot be heard to officially acknowledge that fact. That's important, and it sets this case apart from the entire line of precedence regarding state secrets, all of which depend on there being an actual secret at issue. Here, it argues that because most of our document requests, and I would hasten to add not all of them, but most of our document requests mention the name Poland, the implication of Polish places and persons is inescapable. And even if the subpoenas were modified to remove those references, it would be inescapable. First of all, the government is ignoring that our subpoenas for oral testimony do not request, do not mention Poland, as of course they wouldn't. And however, the court decided to ultimately cabin the scope of discovery, it could certainly exclude questions that directly related to Poland if it has to. And indeed, there was a precedent for that. Wouldn't the whole purpose of the deposition or the oral discovery be in connection with what happened in Poland? Isn't that their argument? This whole request derives from sort of an indirect request from the Polish authorities. Well, I mean, that's what seems to be going on. Your Honor, I disagree that it hinges on a request from the Polish authorities. I said indirect. Well, even indirect. That wasn't the actuating event, if you will. You know, our client has legal rights under Polish law to present this evidence, and he's doing it on his own behalf and in his own interest. And, you know, just as a starting point, in fact, he has the right to appeal if the prosecutor ultimately decides not to lay charges. And he might. I thought I read someplace where some of the Polish authorities or prosecutors suggested they would be receptive to receiving whatever information he could present. That's true. I'm not denying that at all. It certainly is the case that they are, in fact, receptive. And that's something that the district court found in granting the original subpoena request, because, of course, that's an intel fact. But the baseline, though, isn't it the fact or correct to say that all this is taking place because of allegedly what happened in Poland? But as of now, I think it's fair to say as well that the Polish prosecutor appears to know the who and the where. The government does not want to admit the where. This is not a question of whether they need to be forced to admit the where. What the Polish prosecutor found out transpired in Poland. The enhanced interrogation program has been declassified. That, too, is in the record. Without reference to Poland, certainly, we would be entitled to ask fully, you know, what were the conditions of confinement at the site? What, let me use the word, what tortures were inflicted on this prisoner? That's declassified. In fact, if you look at the Senate committee report, it's known that these tortures were inflicted on Abu Zubaydah. What's not certain is where. In the Saleem case, the same kind of testimony was allowed with respect to a site that was always referenced as detention site Kobalt. Here we're in detention site blue. Detention site Kobalt is widely believed to be in Afghanistan. So let me just back you up a minute. A minute ago, you just said there has to be a secret and there is no secret. Is that right? So does any of our case law or relevant case law suggest that the government, you know, the government didn't have a hand in deciding the information, that the government should not be put in a position where it's forced to disclose? If it were a question of, the answer to your question is that I can't think of a case exactly like that. There are no cases, there are two cases that I can think of where this court has held that the fact that the government itself has made some disclosures has lifted the veil of secrecy from particular categories of information, Jeppesen Data Plan and al-Haramain. However, neither of those cases said that it was dependent on the government's disclosure. You know, if the government decided to declare that the location of this courthouse is a state secret, that wouldn't make it so. It's more than what the government thinks it is. Here we have a case of extraordinary notoriety. So let me ask you, so under a case law, does the court, do we have, and the district court for that matter, have the authority to say, well, government, I recognize that you don't want to admit this, but this just really isn't a state secret. This just doesn't qualify. This just doesn't at rock bottom qualify as a secret, because everybody knows through, at least through the European court's ruling, that there was a site in Poland. Right. And Abu Zaid was treated there. Yes, I would say that is certainly within this court's authority. Obviously, there's a level of deference involved, but the language of Jeppesen is very clear that the court is supposed to give a certain degree of deference to the government. It also has to look with a careful and, you know, exact quote, a careful and indeed a skeptical eye at claims of state secret. So there would be cases certainly where the court would disagree with the government's claims that there was a state secret. And in fact, there have been such cases, not in this circuit, but for example, the DC district court in virtual defense and development versus the Republic of Moldova did find that certain state secret claims were not state secrets and it allowed discovery of a portion of what was claimed. Similarly, the seventh circuit in ACLU versus Brown rejected a claim of privilege as to certain domestic intelligence gathering activities. So yes, this court certainly has authority and has claimed the authority to review a claim of state secrets substantively, and it should. Counsel, can I interject a question, which may not be pertinent after analysis, but I wondered, is there any authority as to whether the balance or balancing of factors considered in a case alleging state secrets is or should be different when the evidence is so clear that it is sought for use in a foreign tribunal, like the European tribunal here, as opposed to a domestic tribunal like a federal court in the U.S.? A case of that nature doesn't come to mind, Your Honor. I'm not aware of one. But I would say that, you know, there is, to my mind, there is a relevant distinction, which here is helpful, and that is that in much of the case law in this circuit and elsewhere, one of the main concerns that is expressed is when you're dealing with a case that, you know, a case is a matter of storytelling in a way and there are conflicting stories, right? When you are planning to present a case and take it to trial, there is an increasing risk as you progress towards testimony in open court that something will go wrong and something will be blurted out that shouldn't be. In this case, we don't have that issue. Mitchell and Jessen will never be testifying in Poland. Whatever testimony they're allowed to give here will be within the control of the court, and it will be a set piece that will be provided to the Polish government. I want to, have you finished with Judge Gould? I am. Let me just take this in another direction, which is you start off by talking about disentanglement. So, and this is a discovery proceeding only. There is no underlying case here in the United States, as Judge Gould just referenced. But how do you propose to, you know, how do you disentangle, or how should the district court go about disentangling what it felt was, that there was, there were some state secrets involved, like who, for example? How should the district court go about that task in this particular kind of proceeding? Your Honor, I see that I've already run into my rebuttal time. I think Judge Gould will let you answer my question. I'm going to also, we'll give you several minutes of extra rebuttal time. I appreciate that. The answer to your question, I think, is that, you know, there are many categories of information that we've specifically outlined to the district court. I would say it's our responsibility to outline categories of information for the district court to address and decide what side of the line they fall on. If the district court were to disagree with our position on Poland, even though it's stated the opposite in its decision, there still remains the opportunity to ask questions about Abu Zubaydah's treatment at detention site Cobalt. And there are categories within that, you know, was he tortured? What about his food? What about clothing? What about medical care? All of those things could be ruled upon individually. But the district court never initiated that process. It was an error not to disagree. So you envision the district court sort of identifying the categories of information that fall on the non-state secret side? Right. The deposition would take place and the government's lawyers would assert an objection or whatever if they believed that a particular question went over the line? Actually, yes, certainly, as in the Salim case. And certainly the parties could have a discovery stipulation which would outline any differences in procedure. I've had the question is objected to. It's simply saved for the court to rule on later. That's certainly possible here. That wouldn't offend us. So there are certainly ways to manage that. And it was managed effectively in Salim with respect to exactly the same categories of information. And what about the document request? So as to the document requests, Rule 45 of the federal rules allows the district court to modify them. If the reference to Poland is inappropriate, notwithstanding what the district court said, then the document request could be modified to refer to detention site blue, which is not a, you know, the existence of the site is not privileged as such. It's been declassified. The Polish prosecutor, as I understand it, believes detention site blue is the same as the one in Poland. We don't know the quality of his evidence regarding that, but this is a prosecutorial investigation. He's allowed to collect whatever disparate facts he can to try to make his case. And we have a statutory ability to assist him. Okay. For your planning purposes, let me say, Stacy, could you, we'll give you five extra minutes. That, you've put two over. Can you handle rebuttal in three minutes? Or do you need five? We're going to give your adversaries, your colleagues, the same amount of extra time. I made a judgment that two minutes would be enough. I'll hear my adversaries argument and if for some reason I think with the court's permission, if I think more time is required, I'll request it then. Okay. That's fine. Let's put three minutes. That's good. Thank you, Your Honors. Again, the government can take an extra five minutes because that was over. Make an extra five because he was two minutes over. You do not have to use all that time. I appreciate that, Judge Gould, and I hope not to. May it please the court, I'm Thomas Byron from the Department of Justice. I represent the United States of America. I want to preliminarily address two matters before I begin the argument itself, and that is first, I do represent only the United States, not the individual doctors, Jessen and Mitchell, who are represented by Christopher Tompkins, who's here at council table and who has informed the court that the doctors take no position on the legal issues. Secondly, I think it's important to note at the outset that because this case concerns sensitive, classified, privileged national security information, nothing I say today should be understood to confirm or deny any of the matters that are addressed by the government's assertion of the privilege or that plaintiffs have alleged. I appreciate the court considering that. The district court here correctly quashed the subpoenas, and this court should affirm that decision on either of two alternative grounds. First, all of the information that the petitioners here seek is covered by the state secrets privilege and statutory privileges. The district court here disagreed with respect to a single fact, whether or not the CIA conducted certain operations in the territory of Poland or with the cooperation of the Polish government. Now, as the Pompeo Declaration makes clear, that question is the central issue in this bill, explains the harm to national security. Let me... But haven't... What do we do with the European court's finding? So, Judge Pyes- Does it just not exist? I mean, I don't understand. So, I think, Judge Pyes, the question- My other question was, you know, like when I was asking him about whether or not the court can decide whether or not there truly is a state secret. Sure, let me- We have this finding by the European court that, yeah, these events took place in Poland. Let me see if I can address that in two ways. So, first, I think it's important to recognize that the analysis that this court and the district court are supposed to undertake under Reynolds and Jeppesen, and this court's case law makes clear, is about whether the state secret's privilege is properly asserted over particular categories of information. And here, of course, the Pompeo declaration specifically addresses that in the terms of the framework that Reynolds tells us and Jeppesen tells us is appropriate, which is, would disclosure of the information be expected to cause harm to national security? And the declaration here explains why it would. So, let me then turn to the question that I think plaintiffs are arguing, which is that this court should second-guess that description of the likely harm to national security on the ground that others, but not the United States government, have asserted certain facts or alleged facts. So, here, the European Court of Human Rights and the former president of Poland have made statements that the plaintiffs rely on. I think it's important, though, and we pointed this out in our brief, that those kinds of are not sufficient and were not sufficient in the Jeppesen case itself, where they were cited and relied on by the dissent, but deemed by the majority not to be sufficient to overcome the privilege there. So, to hear... But there's, you know, it's all, as I recall from Jeppesen case, we didn't have anything like this kind of finding from the European, from a court like the European Court of Human Rights. So Judge Pius, I think that's... Everything was very, very top state secret. I couldn't, we couldn't even look at any documents unless we were in the secure room. And that's not, I mean, it seems like times have changed a bit. So Judge Pius, what's changed, of course, is that some information has been declassified since that time, most notably in conjunction with the release of the Senate Select Committee's report. But looking at the Senate Select Committee's report, the very information that petitioners here seek, in other words, the location of any detention site and the cooperation of any foreign government, itself remained classified in that report. And that's essential. It remains the same. And I think that's one of the reasons explained in the Pompeo Declaration. Now, I don't think it's significant that the European Court of Human Rights made a different determination under its own legal procedures and framework. Of course, that's not binding on this Court. And this Court has to follow a different set of laws and requirements imposed by Jeppesen and Reynolds under U.S. law. And I think that's really important as the starting point, that the correct analysis for this Court, and, of course, we acknowledge this Court and the district court must undertake scrutiny of the assertion of the privilege, but that scrutiny also must be the same. Well, on this one point, the district court didn't place much stock in your argument. So, Judge Pius, I think you're right that the district court disagreed and second-guessed the assertion of the privilege with respect to a narrow fact, a single fact, and that was whether or not there had been any operations in Poland or with the cooperation of the Polish government. That fact, though, of course, we disagree with the district court about that. Yes. We think the record here amply demonstrates the harm to national security that could be expected to result from disclosure of that information. But it doesn't matter here because the district court nevertheless quashed the subpoenas, as it should have, and it was entitled to do so on either of two alternative grounds that this Court itself can affirm, either  its discretion, its broad discretion. And the discretion here was not abused because the district court recognized and used the shorthand of usefulness, but that had nothing to do, of course, with admissibility, which is an argument that Zubida makes in the opening brief. It instead reflects the Court's assessment of the burden versus the need. And the Supreme Court in Intel made clear that unduly burdensome or intrusive discovery requests can be rejected, and that's what the district court did here. The burden is demonstrated, by the way, by the Saleem case itself that petitioners rely on so heavily. In the depositions that were allowed to go forward there, and by the way, they only went forward after the government made very careful, extensive analysis, just as it did in this case, and the district court superintended the discovery there. But they went forward with the participation of, if I remember correctly, eight different government officials and attorneys who sought to protect the information that was subject to the state secret's privilege in that case. The difference in that case compared to here is that that case was not just about a single location or a single foreign government. It was instead not specific to any particular location or any particular source or method. Location sources and methods are what remain classified and privileged in this case, and as the district court correctly recognized, this case is all about, petitioner's request for discovery is all about trying to establish what happened in Poland with the cooperation of the Polish government. And in fact, the district court pointed out in its opinion at page 61 of the excerpts that it would be disingenuous to do what the petitioners have requested, which is to use a code word or a code name for a detention site, when the whole premise of this case is about whether they can prove what happened in Poland. I'd like to address as well two mistakes that I think Petitioner's Council has made both in their briefing and in their argument today about how the state secret's privilege works and how the courts approach it. First, about the question of official confirmation. We record that official confirmation is the sine qua non that is the absence of which allows the U.S. government to maintain its position that it will not confirm or deny classified privileged information. The petitioners make a different argument about official confirmation, which just misunderstands the role of that principle. They argue that Drs. Mitchell and Jessen cannot themselves testify in a way that would constitute official confirmation. But that just has nothing to do with the role of that question in the analysis. Instead, the role has everything to do, as the state secret's privilege framework makes clear, with whether or not there would be harm to the national security from disclosure of the privileged information. And the Pompeo Declaration makes clear that statements by foreign government officials or the media or even the European Court of Human Rights are not sufficient to equate or constitute or overcome the need for official confirmation by the United States government. Secondly, the petitioners put great reliance on the third step of the Reynolds framework for analyzing the state secret's privilege and its effect on litigation. But that's mistaken because there is no ongoing case in U.S. court here, as I think Judge Gould, your question pointed out earlier. Instead- Why did that make a difference? Well, I think it makes it different in- It seems to me that if all you're dealing with here is a discovery situation- Yes. That the district court, I mean, its focus is very narrow. I mean, you don't have to be concerned about what witnesses are going to do and, you know, control of the lawyers. I mean, it's just, it's a different scenario for me based on my experience. Well, let me see if I can point out why I think that cuts the other way, Judge Pius, because first of all, the statute 1782A itself makes clear that if information is privileged, it is not an appropriate subject. And that's what the Intel court held. This court has held repeatedly for discovery under a 1782 proceeding. That's a little different than the standard in ongoing litigation. But the reason it makes a difference is because where the privilege has been asserted in a case that's properly before a court that has jurisdiction over the parties in the dispute, that court then has to decide after assessing whether the privilege is properly asserted, what's the effect of that privilege? What's the effect of withdrawing the evidence from the dispute? Here, though, the court that has to consider that question is the Polish court, the Polish tribunal, not the district court in this case. Because the district court in this case is, its job is done once it determines that the information is privileged. And then with respect to any unprivileged information, if any remains, whether the need outweighs the burden, whether it's unduly intrusive and burdensome and the other Intel factors and the other factors that may come into play. But here, there is no role for the question about whether the underlying dispute should be allowed to proceed further, as was the case, by the way, in Salim, which was a case between the plaintiffs, Salim and two others, against Drs. Mitchell and Jessen themselves in district court. And so the court there actually did have to consider that third step of the Reynolds framework, but not so here. And I think that really is the difference. This court in Bellevue made the point in the context of appellate jurisdiction analysis that the underlying proceeding is ongoing in the foreign tribunal, not in the U.S. court. And that made a difference for that purpose. We think it equally makes a difference for this purpose, for understanding the effect of the assertion of the privilege before the district court here. If I may, I don't want to take any additional time unless the court has specific questions, but I do want to just leave the court with the point that Poland and the United States have negotiated a treaty, the Mutual Legal Assistance Treaty, that has been employed and that the outcome of that treaty mechanism, which the governments of the two countries have negotiated, resulted in a decision by the United States that it would not provide evidence that's also covered by the request here, that's part of what's at issue here. And the petitioners here should not be allowed to circumvent that, just as the petitioner in the Fourth Circuit, Al-Fayed. Is there a case that supports that notion? So there are multiple cases, Your Honor. We cited them in the briefs. I'll point to two, if I may. First, the Al-Fayed case in the Fourth Circuit, which made clear that the petitioner there could not circumvent the FOIA constraint on obtaining classified information. FOIA is? Right. That's a little bit different. So I think it's actually quite similar here, but there's also a case law that addresses the role of Mutual Legal Assistance Treaties, including the Commissioner's Subpoena case out of, I think it was, the Eleventh Circuit, and two district court cases, one of which from this very district here in Western Washington, that we cited in our brief. And so I'd encourage the court to look to those, which we think emphasize. And by the way, the Intel Court also made clear that one of the factors that the district court should consider is whether the discovery request is an attempt to circumvent any of the procedures or policies of either the foreign government or the United States. And that's an express basis for consideration of that factor as well. So for that reason, and those we've discussed in our briefs, Your Honor, we'd urge the court to affirm on either of the grounds that we've identified, if the court has no further questions. Counsel, I have a question for you, the same one I asked your colleague on the other side of the case. Is there any authority in the Supreme Court or the Ninth Circuit or any other federal court that's addressed whether the factors to be balanced should change if the national secret evidence is sought for use in a federal court in the U.S. on the one hand or in a foreign forum of some sort on the other? So Judge Gould, I think the answer to that is yes, for some of the reasons that I was addressing in my responses to Judge Piazza's questions. And let me see if I can try to put that together. So first of all, we think that the Bellevue case, although it was addressed in jurisdiction, makes clear that because the proceeding is ongoing in a different forum, a different tribunal in a foreign country, that that makes a difference for purposes of the court's analysis in that case of jurisdiction. We think so too here for the framework about what's the effect of the assertion of the privilege, what's the effect on the disposition of the case in U.S. court. We think that's one point that makes a difference. Secondly, the factors that the Supreme Court identified in Intel and this Court's identified in its own cases for interpreting the broad discretion that's afforded to a district court under 1782 emphasize the difference between a 1782 discovery application, which does afford that broad discretion, and a district court's interpretation and application of the discovery rules under U.S. law that would govern or the evidentiary rules that would govern a dispute that's properly before the court in a case that has been brought in U.S. court. And so I think those two sets of cases make clear that the outcome has to be different and the analysis has to be different. Does that answer your question? Yes, I think it does. Thank you. Thank you. We'd urge the Court to affirm, and I thank you. Thank you again for your time, the extra time, Your Honors. First of all, some of the questioning went to whether there was a secret at all, and I heard Mr. Bondi refer to Jeppesen and say that the ruling of the European Court of Human Rights was not enough in that case, but that ruling came after Jeppesen was decided. And indeed, the district court in the Saleem case, when it allowed the kind of discovery that we're talking about here, noted that the United States had declassified all that information after Jeppesen, so much more discovery was allowed than might have been allowed under Jeppesen itself. Everything was very top secret in Jeppesen. It was. The only thing that had been disclosed at that time was the existence of the Extraordinary Rendition Program, and that was noted as something that was not a secret because of it. Since that time, of course, we've had all kinds of detail about waterboarding and everything else. So much of that information has now been declassified, and so the question is, in the context of a prosecutorial investigation, we're not talking about, we're not even up to talking about what a foreign court might ultimately do, but what a prosecutor does is gather facts and try and determine whether he has a case. We get to supply some of them. What we're proposing is to supply only those facts that are not privileged. The district court made a statement that even the location of the site in Poland isn't privileged. If nothing else, that would require a remand in order for the district court to straighten out what he meant, because if that's true, then we're entitled to virtually everything we've asked for. But if it's not true, then we would still be entitled to everything that's declassified so long as we don't insist on making Mitchell and Jessen testify that it was in Poland. Would you just respond to the government's argument a few minutes ago that you shouldn't be allowed to circumvent our government's declination to honor the request from the Polish government to supply the information that they have? And that you're, this is just a proceeding to get around that, and that shouldn't be allowed? Well, it's not, because we, Abu Zubaydah and Joseph Margulies, have no right under the multilateral treaty. They're trying to vindicate their own rights under Polish law, and under the law of this country as well. But secondly, the district court, in granting our request for the subpoenas in the first instance, addressed that issue, and weighed it in the balance of intel factors, and properly ruled that as to the Polish government's interest, it weighed one way. As to the U.S. government's interest, it weighed another way, and he found that that was awash. Weighing all the intel factors, he ruled in our favor. He was specifically addressing that intel factor. Is this an attempt to get around the U.S. government's position? He said it was not, by the way. And so, that hasn't been appealed. There's no occasion for this court to disagree, unless it seeks to do so as an alternative ground for affirmance. But it's not a ground that presents itself. With respect to the multilateral treaty, therefore, that's kind of a sideshow, in our opinion. Judge Gould, you asked, I think, I had a little difficulty hearing, but I think you asked what authority exists, whether a different balance should be applied in the case where the case would ultimately be before a foreign court. Of course, the district court has no supervisory authority over what a foreign court, or in this case, a foreign prosecutor, might consider. But as a matter of comedy, we're talking about a member of the European Union acting at the direction of the European Court of Human Rights. I think that this court wouldn't ordinarily expect that those courts would properly weigh the provenance of evidence, what might or might not be included. The Polish prosecutor won't go forward unless he thinks he has a complete case. The Polish prosecutor also has a duty to consider the rights of the accused. And this court should expect that Polish authorities will exercise the same kinds of responsibility, whether through exclusionary rules or giving appropriate weight to the evidence. My time is increasing instead of decreasing. Does the court have any further questions? Very good. Thank you very much for your time. Thank you, counsel. I want to thank both counsel who argued today for their learned and spirited advocacy of their clients' positions. And this is a very interesting case. If the court after conference has any ideas that it wants supplemental briefing on a particular issue, we'll let you know. But other than that, the cases, unless that happens, the case is now submitted for decision. And as I noted at the outset of the day, in due course after we confer with Judge Pragerson and an opinion is worked up, we will let the parties know. Thank you for your efforts on this. The court is recessed.
judges: Gould, Paez, Pregerson